

**ORDERED in the Southern District of Florida on February 24, 2011.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | | |
|---|---|---|
| IN RE: | ) | Case No. 10-26423-BKC-AJC |
| | ) | Case No. 10-26436-BKC-AJC |
| INFOLINK GROUP, INC., | ) | (Jointly Administered) |
| INFOLINK INFORMATION SERVICES, | ) | |
| INC. | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| _____ | ) | |

**ORDER GRANTING MOTION FOR ENTRY OF ORDER**
**DIRECTING DEBTOR TO RE-ISSUE STOCK CERTIFICATES**

**THIS CAUSE** came before the Court for evidentiary hearing on January 27, 2011 upon

Movant/Judgment Creditor, Pedro Garcia Menocal's Motion for Entry of an Order Directing

Debtor to Re-Issue Stock Certificates (D.E. 158).  The Court, having heard the proffers and

representations of all interested parties, having heard and considered the sworn testimony of the

1

witnesses examined in open court, having reviewed the case file, and being otherwise duly advised in the premises, renders the following decision.

## <u>BACKGROUND</u>

1.      On September 14, 2010, the Movant, Judgment Creditor Pedro Garcia Menocal ("Menocal") filed his *Motion for Entry of an Order Directing Debtor to Re-Issue Stock Certificates* (D.E. 158) (the "Motion") moving the Court to direct the Debtor, Infolink Group, Inc. to re-issue stock certificates titled to Prieur J. Leary, III ("Leary") in aid of execution upon an unsatisfied final judgment entered in favor of Menocal and against Leary in a civil action prosecuted in Miami-Dade County Circuit Court (the "State Court Action").

2.      In the State Court Action, entitled *Prieur Leary, III v. Leiderman Shelomith, P.A., et al* (Miami-Dade County Circuit Court Case No. 07-45111 CA 06), Menocal obtained a final judgment against Leary for the principal sum of $48,749.32 plus post-judgment interest accruing at the statutory rate.

3.      Leary filed a *Motion to Strike* Menocal's Motion (D.E. 169), alleging, among other defenses, that "the stock certificates Menocal is seeking are marital assets immune from levy or seizure by a creditor, as the stock certificates in question are protected by Tenancy by the Entirety." (D.E. 169, par. 5).

4.      On October 21, 2010, the Court denied the Motion Strike, but scheduled an evidentiary hearing to determine whether the subject stock, of which Menocal sought re-issuance in aid of execution, was issued and titled to Leary alone or titled to both Leary and his wife as tenants by the entireties.

5.      On December 1, 2010, Leary filed a *Motion to Dismiss Contested Matter for Lack of Jurisdiction* (D.E. 306).

6.      After having rescheduled the evidentiary hearing several times, on January 27, 2011 the Court conducted the hearing and, at the express request of Leary, the Court first considered and ruled upon the Motion to Dismiss. (Tr. p. 8)  The Court denied Leary's Motion to Dismiss, finding it to be without merit. (Tr. p. 9)

7.      Leary also objected to the Court conducting the evidentiary hearing as scheduled, asserting he had not received a copy of Menocal's Exhibit Register and Witness List prior to the hearing. (Tr. p. 14)  However, the record indicates that Menocal attempted to deliver copies of his Witness List and Exhibit Register to Leary's attorneys and to serve the Witness List and Exhibit Register at Leary's last known address via U.S. Mail, Federal Express, e-mail, and hand delivery. (D.E. 403)  Menocal apparently delivered a copy of his Witness List and Exhibit Register to Robert Edwards, attorney for Leary in a limited capacity, but Mr. Edwards returned same to Menocal, supposedly because Leary had not authorized Edwards to accept service thereof.[1] (D.E. 403, Paragraph 11)

8.      During the Evidentiary Hearing, Leary confirmed his mailing address and Menocal affirmed that it was to that exact address that he attempted to deliver copies of his Witness List and Exhibit Register. (D.E. 403; Tr. p. 59)

9.      The Court overruled Leary's objection, finding that Leary had been afforded ample opportunity to participate in the proceedings.  Leary chose to appear by telephone at the evidentiary hearing. (Tr. p. 14)

---

[1] Mr. Edwards did not represent Leary in the limited matter of the subject Evidentiary Hearing held on January 27, 2011.

**<u>FINDINGS OF FACT</u>**

10.     Thompson Lykes ("Lykes") is a founding shareholder, and a director and secretary, of Infolink. (Tr. p. 11)

11.     James C. Kurzweg ("Kurzweg") is a founding shareholder and a former employee of Infolink. (Tr. p. 26)

12.     Lykes and Kurzweg are still shareholders of Infolink. (Exhibits 2 and 16; Tr. p. 12, 26)

13.     Infolink was previously known as Infolink.com, Inc. (Tr. p. 11; Exhibit 3)

14.     Leary was the president of Infolink at the time of the execution of the Infolink Stock Purchase Agreement. (Tr. p. 15; Exhibit 3)

15.     In the *Affidavit of Prieur J. Leary, III in Support of Application to Retain Rimari Investment, N.A. as Accountant and Valuation Consultant to the Debtors*, Leary refers to himself as the <u>Chief Executive Officer of Infolink Group, Inc. and Infolink Information Services, Inc.</u> (D.E. 9-4; Exhibit 1)

16.     Lykes, Kurzweg, and Leary each executed the Infolink Shareholder Agreement dated June 15, 2000 (Tr. p. 13, 15, 26; Exhibit 3)

17.     Leary executed the Shareholder Agreement as 'Prieur J. Leary, III, individually'. (Tr. p. 15, 26; Exhibit 3)

18.     Patricia Leary is Leary's wife. (Tr. p. 17, 27)

19.     Patricia Leary was not a party to the Infolink Shareholder Agreement, either individually or jointly with her husband. (Tr. 17, 18, 19, 26; Exhibit 3)

20.    Infolink never issued stock to Patricia Leary either in an individual capacity or jointly with her husband. (Tr. p. 17-20, 24, 26, 28, 32-33, 35, 37, 40, 41, 43; Exhibits 2, 3, 4, 5, 6, 13, 14, 15, 16)

21.    The Debtor never issued any stock to any person jointly with his or her spouse. (Tr. p. 32-33)

22.    Patricia Leary is not a shareholder of Infolink on any Infolink stock register (Tr. 17-20, 24, 26, 28, 32-33, 35, 37, 40, 41, 43; Exhibit 2, 3, 4, 5, 6, 13, 14, 15, 16)

23.    Patricia Leary is not listed as an equity security holder of Infolink, either individually or as Leary's wife, in the *Declaration Under Penalty of Perjury Regarding List of Equity Security Holders* filed by Leary in this case. (Tr. p. 37-38; D.E. 3, p. 5-6; Exhibit 13)

24.    Infolink's common stock ledger states that as of July 14, 2000, Leary alone was issued 1,200,000 shares of Infolink stock upon the execution of the Infolink Shareholder Agreement. (Tr. 16, 24; Exhibit 4)

25.    An Infolink stock ledger prepared and used by Infolink in 2000, states that Leary was, at the time, the sole and exclusive owner of 1,000,000 shares of restricted Infolink stock and 1,200,000 shares of unrestricted Infolink stock. (Tr. p. 27-28; Exhibit 5).

26.    Leary himself wrote an e-mail to Kurzweg in which he stated that as of August 7, 2002 he alone was the owner of 2,200,000 shares of Infolink stock, while Kurzweg owned 637,250 and Lykes owned 728,411 shares. (Tr. p. 33-34; Exhibit 7)

27.    Schedule K of Infolink's 2008 tax returns identify Leary, and Leary alone, as the owner of 57% of Infolink's stock. (Tr. p. 38-39; Exhibit 14)

28.     Tax filings filed by the Debtor's shareholders pursuant to Section § 83 (b) of the Internal Revenue Code did not include any filings by Patricia Leary. (Tr. p. 42-43; Exhibit 15)

29.     Tax filings filed by the Debtor's shareholders pursuant to Section § 83 (b) of the Internal Revenue Code were executed by Leary alone and not jointly with his wife. (Tr. p. 43; Exhibit 15)

30.     Patricia Leary is not listed as a shareholder of Infolink, either individually or as Leary's wife, in Schedule K of Infolink's 2008 tax returns. (Tr. p. 38; Exhibit 14)

31.     The Infolink Group Stock Transfer Ledger, submitted by Leary in this action (D.E. 28, p. 7-8), provides a true, correct, and accurate description of the Debtor's shareholders and all Infolink stock issued to Leary, which stock was issued as follows (Tr. p. 30-31; Exhibit 2):

| Certificate No. | Number of Shares | Date |
|---|---|---|
| C1 | 1,200,000 | 5/15/2000 |
| C12 | 400,000 | 5/31/2000 |
| C17 | 600,000 | 6/13/2000 |
| C36 | 48,000 | 11/19/2002 |
| P5 | 3,574,171 | 1/10/2004 |

32.     The Infolink Stock Transfer Ledger identifies Leary as the sole and exclusive owner of 5,822,171 shares of Infolink stock. (Tr. p. 30-32; Exhibit 2)

33.     Leary produced the corporate minute book to the attorney for the trustee, which minute book includes original stock certificates for all shareholders except Leary and Lykes. (Tr. p. 49-50; Exhibit 16)

34.     Leary produced no other original stock certificates. (D.E. 282-1; Exhibit 16)  He did, however, produce copies of stock certificates C1, C12, C17, C36, and P5 which do not

appear to be, and were not proven to be, true and correct copies of the certificates issued by Infolink. (Tr. p. 17-20, 24, 26, 28, 31-33, 35, 37, 40, 41, 43; Exhibits 8-12 and 16)

35.    Lykes, as Secretary for the Debtor, signed all stock certificates issued by the Debtor in 2000. (Tr. p. 17-20; Ex. 16)

36.    Lykes testified he never signed any certificates issued to Patricia Leary either in her individual capacity or jointly with Leary, her husband. (Tr. p. 18-20)

37.    Infolink issued stock certificate C1 for 1,200,000 shares of Infolink stock to Leary alone and not jointly with his wife on May 15, 2000. (Tr. p. 15, 18, 24; Exhibits 4, 8 and 15)

38.    Infolink issued stock certificate C12 for 400,000 shares of Infolink stock to Leary alone and not jointly with his wife on May 31, 2000. (Tr. p. 15, 24; Exhibits 2, 4, and 5)

39.    Infolink issued stock certificate C17 for 600,000 shares of Infolink stock to Leary alone and not jointly with his wife on June 13, 2000. (Tr. p. 15, 18, 24; Exhibits 2, 4 and 5)

40.    Infolink issued stock certificate C36 for 48,000 shares of Infolink stock to Leary alone and not jointly with his wife on November 19, 2001. (Tr. p. 30-32, Exhibit 2)

41.    Infolink issued stock certificate P5 for 3,574,171 shares of Infolink stock to Leary alone and not jointly with his wife on January 1, 2004. (Tr. p. 30-32, Exhibit 2)

42.    This Court finds that Leary is the sole owner of 5,822,171 shares of Infolink stock and that Leary is not, and never has been the owner of any Infolink stock jointly with his wife, Patricia Leary.

43.    Patricia Leary is not and never has been a shareholder of Infolink, either individually or jointly with her husband, Leary.

## CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 362 et. seq., Menocal seeks reissuance of Leary's stock as a remedy in aid of execution on a state court final judgment.  Menocal asserts that, without the relief, he will have no means of utilizing the state law remedy afforded to a judgment creditor by Florida law, specifically Florida Statute § 678.1121.

Bankruptcy courts have jurisdiction over "civil proceedings" arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334 (b).  A dispute is "related to" a case under Title 11 when its result "could conceivably" have an 'effect on the estate being administered in bankruptcy'. *Miller v. Kemira, Inc*. (*In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), overruled on other grounds by *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 1995).  A bankruptcy court's jurisdiction may extend to non-debtor disputes so long as the litigation of the [non-debtor] dispute could conceivably have an effect on the bankruptcy estate. *Matter of Lemco Gypsom, Inc*., 910 F.2d 784 at 788.

The outcome of Menocal's Motion could have a material effect on this case and the administration of the estate in bankruptcy.  A public auction and sale of any reissued shares of stock in the Debtor may place the highest and best bidder, who bids upon and receives the subject stock, in the position as the majority shareholder of the Debtor.  The conceivable displacement of Leary as the controlling shareholder of the Debtor and his conceivable dislocation from the Board of Directors of the Debtor will impact the administration and management of the Debtor and affect the corporate governance of the Debtor.

The conceivable displacement of Leary from a position of executive authority over the affairs of the Debtor satisfies the long-standing requirement that the bankruptcy court can only

exercise its jurisdiction over a non-debtor dispute when the outcome of the proceeding could conceivably have an effect on the administration of the bankruptcy estate.  Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Pacor, Inc.,* 743 F.2d at 984.

Based upon the unrebutted testimony elicited during the January 27, 2011 Evidentiary Hearing along with the documentary material admitted into evidence, the Court rejects Leary's unsubstantiated contention that he owns the stock upon which Menocal seeks to levy as tenants by the entireties with his spouse, Patricia Leary.  There was ample credible witness testimony and documents entered into evidence during the Evidentiary Hearing which support the finding that Leary received the stock certificates individually in his own name and right, separate and apart from his spouse.  Leary failed to contradict or rebut the evidence through his cross-examination of the witnesses.  Both of the witnesses who testified during the hearing furnished credible testimony which establishes that the Debtor issued substantial shares of stock to Leary from the year 2000 onward but that the Debtor never issued any stock to Leary's spouse, Patricia Leary, either jointly or individually.

The Stock Transfer Ledger plainly and unequivocally identifies Leary individually and singly as the owner of 5,822,171 shares (59.22%) of all the stock issued by the Debtor.  Patricia Leary was not listed as an equity security holder of the Debtor, either individually or in her capacity as Leary's spouse, in the Declaration Under Penalty of Perjury Regarding List of Equity Security Holders which Leary filed in this action, and she was not listed as a shareholder of the Debtor, either individually or in her capacity as Leary's spouse, in Schedule K of Group's 2008 tax returns.

During the course of these proceedings, the Court recognizes that Leary has produced to the Trustee original stock certificates for other shareholders but notably has failed to produce any original stock certificates that the Debtor issued to Leary in classes C1, C12, C17, C36, and P6. Leary was afforded advance notice of these proceedings and was given a full and fair opportunity to cross-examine the witnesses and to call witnesses and introduce exhibits supportive of his position. In the end, after hearing and considering the testimony and the documentary evidence, the Court is of the firm belief that the Debtor issued stock titled solely in the name of Prieur J. Leary, III individually and not jointly with any other person, including his spouse Patricia Leary. Accordingly, the Court rejects Leary's defense that he holds title to the subject stock as tenants-by-the-entireties. Thus, it is

**ORDERED AND ADJUDGED** that Judgment Creditor Pedro Garcia Menocal's Motion for Entry of an Order Directing Debtor to Re-Issue Stock Certificates is GRANTED and the Trustee, Drew Dilworth, in his capacity as Chapter 11 Trustee for Infolink Group, Inc., is directed to re-issue the 5,822,171 shares of stock which Infolink Group, Inc. previously issued to Prieur J. Leary, III, and deliver the re-issued stock certificate(s) to the Miami-Dade County Police, Court Services Bureau, for further disposition in aid of execution, as authorized by Florida Statute § 678.1121 (5), *for all of which let execution issue forthwith and without delay.*

###

**Submitted by:**
Neil Rubin, Esq.
Attorney for Judgment Creditor Pedro Garcia Menocal
1130 Washington Avenue—Fourth Floor
Miami Beach, Florida 33139-4600
Telephone: (305) 672-7200
Telecopier: (305) 672-0101

**Copy to**:
Neil Rubin, Esq.
[Attorney Rubin shall forward a conformed copy of this Order to all interested parties.]